UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| AQUASHIELD, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 1:13-cv-119 |
| v. | ) |
| | ) *Lee* |
| SONITEC VORTISAND, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **MEMORANDUM AND ORDER**

Before the Court are a motion to dismiss [Doc. 30] filed by Defendant and a motion to amend complaint [Doc. 35] filed by Plaintiffs. For the reasons outlined below, Plaintiffs' motion to amend [Doc. 35] will be **GRANTED IN PART** and **DENIED IN PART**, Defendant's motion to dismiss [Doc. 30] will be **DENIED**, and the stay of discovery will be **LIFTED**.

### I. FACTS AND PROCEDURAL BACKGROUND

Plaintiffs originally filed their complaint in the Chancery Court for Hamilton County, and the case was removed to this Court on April 11, 2013 [Doc. 1-1 at Page ID # 9-20]. Defendant filed its answer to Plaintiffs' complaint [Doc. 10] on April 22, 2013. Both parties consented to proceeding before a magistrate judge and the case was referred to the undersigned on June 4, 2013 [Doc. 17]. On July 31, 2013, Defendant filed the motion to dismiss currently at issue [Doc. 30], along with a memorandum in support [Doc. 31], arguing that each count alleged in Plaintiffs' complaint should be dismissed for failure to state a claim. On August 8, 2013, Defendant filed a memorandum and motion to stay discovery pending the resolution of its motion to dismiss [Docs. 32 & 33]. On August 14, 2013, Plaintiffs filed a memorandum and motion to amend the complaint with a proposed amended complaint [Docs. 35 & 36].

According to the allegations in the proposed amended complaint, Plaintiffs and Defendant have had a business relationship for some time, during which Plaintiffs produced an antimicrobial filter product, and Defendant produced a physical container to utilize Plaintiffs' antimicrobial filter product.[1] The antimicrobial filter product provides a new method of cleaning water. On or about October 18, 2011, the parties entered into a mutual nondisclosure agreement, which prohibited Defendant from using confidential information provided by Plaintiffs for purposes other than the business relationship between the parties. The nondisclosure agreement defines confidential information to include "any information, financial or technical data or know-how (whether disclosed before or after the date of this Agreement), including, but not limited to, information relating to business and product or service plans, market plans, financial results or projections, list of existing or potential customers or suppliers, proprietary and need-to-know methods, applications, techniques, pricing and costs, business forecasts, sales and merchandising, patents, patent applications, computer object or source code, research, inventions, processes, designs, drawings, engineering, marketing or finance, and other accumulated knowledge or information." [Doc. 35-1 at Page ID # 371 (emphasis omitted)]. Defendant utilized confidential information, including "lab results, test reports, white papers, composition description, and other matters" for purposes outside the joint business relationship, specifically to promote its own antimicrobial filter product. [*Id.* at Page ID # 372].

Plaintiffs make several claims against Defendant in their proposed amended complaint, including that: (1) Defendant has unfairly obtained a business and economic advantage over Plaintiffs through its violations of the Federal Insecticide, Fungicide and Rodenticide Act

---

[1] Both Plaintiffs and Defendant refer to the antimicrobial filter product by an abbreviation, "MCM," in their filings. The Court will not use this abbreviation for purposes of clarity.

2

("FIFRA"), 7 U.S.C. §§ 136, by failing to register its product with the EPA and with state regulatory agencies, and by advertising its product as a pesticide despite not being approved by the EPA; (2) Defendant has violated the Lanham Act, 15 U.S.C. § 1125(a), by making false or misleading statements of fact concerning its own antimicrobial filter product and Plaintiffs' antimicrobial filter product; (3) Defendant has breached a contract claim by violating the mutual nondisclosure agreement; (4) Defendant has converted Plaintiffs' confidential materials for its own use, without Plaintiffs' consent; (5) Defendant has been unjustly enriched through the use of Plaintiffs' materials without permission and through Defendant's representations that Plaintiffs' product was developed by Defendant; and (6) Defendant has engaged in unfair competition. Plaintiffs seek compensatory and punitive damages, attorney's fees and expenses, court costs and discretionary costs, as well as injunctive relief to prevent Defendant from utilizing Plaintiffs' confidential information and from engaging in false and misleading advertising.

## II.     STANDARD OF REVIEW

Rule 15(a)(1) of the Federal Rules of Civil Procedure allows amendments to pleadings "once as a matter of course" within "21 days after serving [the pleading], or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Plaintiffs filed their motion to amend more than 21 days after Defendant's answer to the complaint, and thus Plaintiffs may not amend as a matter of course.   Where a party does not have the right to amend as a matter of course, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated

3

failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citations omitted).

A proposed amendment is futile if it would not withstand a motion to dismiss pursuant to Rule 12(b)(6). *See Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 574 (6th Cir. 2010) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). Thus, when analyzing the futility of a proposed amendment, the court uses the same analysis as for a motion to dismiss, and matters outside the pleadings may not be considered. *See Rose*, 293 F.3d at 420; Fed. R. Civ. P. 12(d).

All pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). While Rule 8(a) does not require plaintiffs to set forth detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At a minimum, Rule 8(a) requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" — that is, Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 & n.3 (2007). A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is thus not a challenge to the plaintiff's factual allegations, but rather, a "test of the plaintiff's cause of action as stated in the complaint." *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). The reviewing court must determine not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679; *Twombly*, 550 U.S. at 570 (holding that a complaint is subject to dismissal where plaintiffs failed to "nudg[e] their claims across the line from conceivable to plausible"). Although a court must take all of the factual allegations in the complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a plaintiff's legal conclusions couched as factual allegations need not be accepted as true. *Iqbal*, 556 U.S. at 678; *see Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Therefore, to survive a motion to dismiss under 12(b)(6), a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

### III. ANALYSIS OF MOTION TO AMEND

In its response to Plaintiffs' motion to amend, Defendant contends Plaintiffs' proposed amended complaint is futile as it fails to state any cause of action that could survive a motion to dismiss [Doc. 43 at Page ID # 536]. Defendant argues that three of Plaintiffs' claims are not recognized under Tennessee law, and the others "rely on strained construals of Sonitec's marketing materials, downplaying of the supplier-purchaser relationship between the parties, failure to plead relevant dates, selection omissions from the [nondisclosure agreement's] language, and 'threadbare recitals' of the elements of a cause of action." [*Id.* at Page ID # 557].

Each claim in Plaintiffs' proposed amended complaint will be addressed below for futility,

5

under the standard for a motion to dismiss.

### A. FIFRA Violation Claim

Plaintiffs allege Defendant violated FIFRA by failing to register its product with the EPA and state agencies, as well as advertising its product as a pesticide without EPA labeling. Plaintiffs allege Defendant has therefore gained an unfair economic and business advantage.

Plaintiffs' claim under FIFRA is futile, as there is no private right of action under FIFRA. Whether a private right of action is created in a federal statute depends on "whether Congress intended to create, either expressly or by implication, a private cause of action." *Bowling Green v. Martin Land Dev. Co.*, 561 F.3d 556, 559 (6th Cir. 2009) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979)). "[A]bsent congressional intent to create a private remedy, 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Martin Land Dev. Co.*, 561 F.3d at 559-60 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 287-88 (2001)).

Congress did not intend to create a private cause of action under FIFRA and it expressly rejected a proposed version of FIFRA that would have permitted citizen suits to enforce the act. *See In re Agent Orange Prod. Liab. Litig.*, 635 F.2d 987, 991-92 n.9 (2d Cir. 1980); *G.C. ex rel. Johnson v. Wyndham Hotels and Resorts, LLC*, 829 F. Supp. 2d 609, 612 n.5 (M.D. Tenn. 2011); *Patterson v. Amos*, No. 1:91CV131, 1991 WL 575826, at *2 (W.D. Mich. Aug. 27, 1991). As Congress's intent not to create a private right of action under FIFRA is clear, Plaintiffs' claim under FIFRA is invalid, fails to state a claim upon which relief can be granted, and is therefore futile. Plaintiffs' motion to amend will be **DENIED** with respect to their FIFRA claim.

### B. Lanham Act Violation Claim

Plaintiffs allege Defendant violated the Lanham Act, 15 U.S.C. § 1125(a), by making false

or misleading statements of fact regarding both Plaintiffs' and its own antimicrobial filter product, and Plaintiffs allege that Defendant's statements tend to deceive a substantial portion of the intended audience. Plaintiffs further allege that Defendant's misleading statements are material, as they "will likely influence the deceived consumer's purchasing decision." [Doc. 35-1 at Page ID # 387].

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1) provides

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
> . . . .
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Lanham Act § 43(a); 15 U.S.C. § 1125(a)(1). Plaintiffs' false or misleading advertising claim requires them to establish:

> (1) the defendant has made false or misleading statements of fact concerning [its] own product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999); *accord Innovation Ventures, LLC v. Bhelliom Enters. Corp.*, No. 11–2090, 2013 WL 3306330, at *5 (6th Cir. June 28, 2013) (quoting *American Council*).

Defendant argues that Plaintiffs' Lanham Act claim is futile because, while Plaintiffs "perfunctorily recited" each required element, "it is clear that Plaintiffs cannot *plausibly* establish

7

all of these elements." [Doc. 43 at Page ID # 547]. Specifically, Defendant argues that Plaintiffs have not plausibly alleged the first three elements of a Lanham Act claim, as outlined above. Regarding the first element, Defendant argues that Plaintiffs have failed to plausibly allege that Defendant made a false or misleading statement of fact. For the second and third elements, Defendant argues that Plaintiffs have failed to plausibly allege "actual deception or a tendency to deceive in a material way that is likely to affect consumer purchasing decisions." [*Id.* at Page ID # 553-54].

### 1. Element One: False or Misleading Statement of Fact

In the proposed amended complaint, Plaintiffs specifically allege that Defendant made a false and misleading statement when it claimed "that its First Generation [antimicrobial filter] product was developed and owned by it when such product was developed by Plaintiffs." [Doc. 35-1 at Page ID # 387]. Plaintiffs further allege that Defendant made statements that may be literally true but are still misleading and deceptive, such as when Defendant used Plaintiffs' test results to market its own product. Plaintiffs allege that these test results are literally true regarding Plaintiffs' product, but are misleading and deceptive to consumers of antimicrobial filter products, who would likely "believe that the test results corresponded to the product being promoted by [Defendant]." [*Id.* at Page ID # 388].

Defendant argues that Plaintiffs failed to plausibly allege that Defendant made a false or misleading statement of fact, as required by the first element of the Lanham Act. Defendant notes the Lanham Act is only violated by a false or misleading statement of fact, "not merely an unapproved or unauthorized statement." [Doc. 43 at Page ID # 547 (citing *LidoChem, Inc. v. Stoller Enters., Inc.*, 500 F. App'x 373, 380 (6th Cir. 2012)]. Defendant claims Plaintiffs have not plausibly alleged a false or misleading statement of fact made by Defendant.

First, Defendant argues that Plaintiffs' allegations regarding Defendant's violation of EPA registration and labeling requirements only concern the statements as being unauthorized, not as being false. Defendant contends that Plaintiffs' allegations regarding "the applicability or inapplicability of certain *registration requirements* is wholly irrelevant to the crucial Lanham Act question of whether [Defendant's] statements were *true or false*." [*Id.* at Page ID # 548]. Defendant is correct that the EPA violations, as alleged by Plaintiffs in the proposed amended complaint, do not touch on the issue of truth or falsity of statements made by Defendant about its product. Plaintiffs allege Defendant's statements "that its antimicrobial products will control Legionella and other pathogens . . . are totally unlawful and illegal" and therefore "a deceptive and devious attempt to mislead consumers about the qualifications of [Defendant's] product." [*Id.* at Page ID # 389]. If proven, a fact finder could conclude such statements *mislead or deceive* consumers.

As Defendant observes in a footnote, Plaintiffs further allege that Defendant's failure to disclose in its advertising materials that its product was not registered with the EPA was deceptive to consumers. [Doc. 43 at Page ID # 548 n.15]. In their proposed amended complaint, Plaintiffs do not allege that Defendant falsely stated it had EPA approval; rather Plaintiffs only state that Defendant failed to disclose that it had not been approved by the EPA.[2] When looking at the statutory text of the Lanham Act, "it is hard to see how a simple failure to disclose can be brought within its terms . . . The key language seems to be 'false description,' false 'representation,' and false 'designation of origin.' The absence of any statement is neither 'false' nor a 'representation.'" *Universal City Studios, Inc. v. Sony Corp. of Am.*, 429 F. Supp. 407, 410 (C.D.

---

[2] In their reply [Doc. 44 at Page ID # 566], Plaintiffs do say that Defendant falsely stated it had EPA approval for its product. Plaintiffs' reply, to the extent inconsistent with the allegations of the proposed amended complaint, however, will not be considered for purposes of this motion to dismiss analysis.

9

Cal. 1977). Thus, courts have construed § 43(a) of the Lanham Act as not imposing any affirmative duty of disclosure. *See*, *e.g.*, *International Paint. Co, Inc. v. Grow Group, Inc.*, 648 F. Supp. 729, 730-31 (S.D.N.Y. 1986; *Expedia, Inc. v. Priceline.com Inc.*, No. C09-0712RSL, 2009 WL 4110851, at *3 (W.D. Wash. Nov. 23, 2009) ("A simple failure to disclose is not a violation of the Lanham Act because the absence of any statement is neither false nor a representation." (internal citation and alterations omitted)).

Second, Defendant argues that its statements, which Plaintiffs allege deceptively indicate Defendant is the source of the first generation antimicrobial filter product, could not plausibly be construed as Defendant claiming that it made the antimicrobial filter itself. Defendant argues that its statements could only be construed as "customer-friendly" marketing statements that Defendant was selling both generations of integrated filter products. Defendant argues that Plaintiffs' argument "is numb to basic linguistic and advertising convention," and that Defendant's "references to 'the Vortisand MCM' and 'our first and second generation MCM' cannot be plausibly construed as statements of fact that [Defendant] *made* the MCM." [Doc. 43 at Page ID # 549-50]. The meaning, intent, or impact of Defendant's statements, however, is still to be determined. At this stage of the case, for a determination of futility, the Court must take as true the facts as Plaintiffs have alleged them, including all inferences.

Third, Defendant argues that Plaintiffs' complaint does not sufficiently allege Defendant made false statements when it attributed Plaintiffs' data to its own product, as the test results and other data were literally true with respect to the first generation antimicrobial filter product, and Plaintiffs failed to plead any dates that could show Defendant used the data to promote the second generation antimicrobial filter product. As Plaintiffs' note in their reply, there is no requirement that dates be pleaded in order to make a claim for false or misleading statements under the Lanham

10

Act. Plaintiffs' claim need only sufficiently plead the elements of the Lanham Act such that the claim is facially plausible, and specific dates are not a required element. The Court does not find that dates are required here for Plaintiffs' complaint to satisfy Rule 8(a) of the Federal Rules of Civil Procedure. Thus, Plaintiffs' claim is not futile due to the lack of dates.

Defendant has failed to meet its burden to show that Plaintiffs failed to plead the first element of the Lanham Act sufficiently for facial plausibility, and thus Plaintiffs' Lanham Act claim is not futile for failing to allege a false or misleading statement by Defendant.

### 2. Elements Two and Three: Deception and Materiality

Plaintiffs allege that Defendant's false and misleading statements in its advertising and promotions have a tendency to mislead or deceive consumers, and Plaintiffs allege that Defendant's statements "are material in that such statements will likely influence the deceived consumer's purchasing decision." [Doc. 35-1 at Page ID # 386-87]. Plaintiffs specifically allege that Defendant's statements "direct[ed] sales from Plaintiffs." [*Id.* at Page ID # 387]. Plaintiffs allege that Defendant's statements "promote[d] [Defendant's] product to the detriment of Plaintiffs' competing product." [*Id.* at Page ID # 388].

Defendant argues that Plaintiffs have failed "to plausibly allege that customers would have been 'materially deceived' in a way likely to influence their purchasing decisions." [Doc. 43 at Page ID # 552]. Plaintiffs do allege, however, that consumers would be influenced to choose Defendant's product over Plaintiffs' product by Defendant's false and misleading statements. Defendant argues again, as it argued regarding the first element of the claim, that it is not plausible that a customer could believe that Defendant was claiming it had manufactured the first generation antimicrobial filter. As outlined above, this argument by Defendant also fails regarding the second and third elements, as all facts and inferences must be interpreted in favor of Plaintiffs for

11

purposes of futility analysis. Finally, Defendant argues that Plaintiffs' failure to allege any advertising dates makes it impossible for Plaintiffs "to allege any facts that support the conclusion that consumers were materially deceived in a way likely to influence purchasing decisions by any of [Defendant's] advertisements." [*Id.* at Page ID # 553]. For the purposes of this futility analysis, taking the facts as Plaintiffs alleged them in the proposed amended complaint, the Court does not find that dates are necessary for Plaintiffs to plead that consumers were materially deceived in a way likely to influence their purchasing decisions. Thus, Defendant has not shown that the second and third elements of the Lanham Act claim were futile.

As Defendant has not met its burden to show that Plaintiffs' Lanham Act claim is futile, Plaintiffs' motion to amend will be **GRANTED** with respect to its Lanham Act claim.

### C.     Breach of Contract Claim

Plaintiffs allege Defendant violated the mutual nondisclosure agreement by utilizing Plaintiffs' confidential information for the promotion of Defendant's own product. The elements of a breach of contract action under Tennessee law include: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W. 3d 367, 374 (Tenn. Ct. App. 2006) (quoting *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)); *see Hinton v. Wachovia Bank of Del. Nat'l Ass'n*, 189 F. App'x 394, 398 (6th Cir. 2006) (quoting *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496, 514 (6th Cir. 1996)).

At issue is the second element of a breach of contract action: nonperformance amounting to a breach of contract. Both parties appear to agree that they entered into the nondisclosure agreement, which is an enforceable contract. Defendant, for purposes of its futility argument,

does not contest that Plaintiffs suffered damages by a breach of the nondisclosure agreement, if one occurred. The issue seems to be only whether Defendant's actions constituted a breach of the nondisclosure agreement. Plaintiffs argue that Defendant's actions were in breach of the nondisclosure agreement, while Defendant contends that its actions were not in breach.

Defendant argues that the proposed amended breach of contract claim is futile because Plaintiffs have not shown that Defendant improperly used or disclosed any information that was actually confidential, as the information Plaintiffs allege Defendant misused or disclosed had all previously been made public by Plaintiffs. In their reply, Plaintiffs do not address Defendant's argument that any information used or disclosed by Defendant had previously been made public by Plaintiffs. Plaintiffs instead focus on the clause of the nondisclosure agreement that prohibits Defendant from utilizing information provided by Plaintiffs for any purpose outside the context of the parties' business relationship. Plaintiffs argue that Defendant breached the nondisclosure agreement "by utilizing materials provided to it by Plaintiffs to directly compete with Plaintiffs' own product." [Doc. 44 at Page ID # 579].

While Plaintiffs state in their amended complaint that they published the "white paper" with Defendant, thus making it public, Plaintiffs do not appear to concede they made public the other documents from which they allege Defendant copied information. Defendant states that some of the documents were published to Plaintiffs' website, thus making that information public, but that is an assertion outside the pleadings and cannot be considered by the Court for purposes of futility. Therefore, based upon the facts as alleged in Plaintiffs' amended complaint, each required element for breach of contract has been pleaded, and thus the breach of contract claim as amended is not futile on the face of the proposed amended complaint. Thus, Plaintiffs' motion to amend will be **GRANTED** with respect to the breach of contract claim.

### D. Conversion Claim

Plaintiffs allege Defendant converted to its own use "Plaintiffs' lab results, testing, and other procedures and work product." [Doc. 35-1 at Page ID # 392]. Under Tennessee law, the elements of conversion that a plaintiff must prove are: "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, and (3) in defiance of the true owner's rights." *Hauck Mfg. Co. v. Astec Ind., Inc.*, 375 F. Supp. 2d 649, 661 (E.D. Tenn. 2004); *see, e.g., Ralston v. Hobbs*, 306 S.W. 3d 213, 221 (Tenn. Ct. App. 2009) (citing *Hanna v. Sheflin*, 275 S.W. 3d 423, 427 (Tenn. Ct. App. 2008)).

Tennessee does not recognize a cause of action for conversion of intangible property. *Stratienko v. Cordis Corp.*, 429 F.3d 592, 602 (6th Cir. 2005); *Ralph v. Pipkin*, 183 S.W. 3d 362, 368 (Tenn. Ct. App. 2005). "Intellectual property is part of 'a species of intangible personal property . . . as opposed to tangible personal property that can be seen, felt, weighed and measured.'" *Ralph*, 183 S.W. 3d at 368 (quoting *Corporate Catering, Inc. v. Corporate Catering, LLC*, No. M1997-00230-COA-R3-CV, 2001 WL 266041, at *5 (Tenn. Ct. App. Mar. 20, 2001)). Intangible property is "[p]roperty that lacks a physical existence," while tangible property is [p]roperty that has physical form and characteristics." *Black's Law Dictionary* 1336, 1338 (9th ed. 2009). Intangible property "means patents, patent applications, trade names, trademarks, service marks, franchise rights, copyrights, licenses, research, formulas, designs, patterns, processes, formats, and similar types of intangible assets." *See* Tenn. Code Ann. § 67-4-2004. While Tenn. Code Ann. § 67-4-2004 addresses taxes, not conversion, it is still persuasive as to whether the property allegedly converted by Defendant is tangible or intangible. Here, Plaintiffs' lab results, testing, procedures, work product, graphs, and laboratory data all appear to lack a physical existence or form, and appear to be intangible property. As the property that Plaintiffs

14

allege Defendant converted is intangible property, Plaintiffs' conversion claim is futile under Tennessee law. Therefore, Plaintiffs' motion to amend with respect to a conversion claim is **DENIED**.

      E.      **Unjust Enrichment Claim**

Plaintiffs allege Defendant has been unjustly enriched by its appropriation of Plaintiffs' property. Plaintiffs contend that equity requires Defendant be "disgorge[d of] all revenue received by it or on behalf of it as a result of such enrichment." [Doc. 35-1 at Page ID # 393]. Tennessee law recognizes recovery based on the theory of unjust enrichment, which "is founded on the principle that a party receiving a benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so." *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W. 2d 674, 680 (Tenn. Ct. App. 1995). The elements of an unjust enrichment claim are: (1) a benefit conferred upon the defendant by the plaintiff; (2) defendant appreciated the benefit; and (3) it would be inequitable for defendant to retain the benefit without paying for it. *Bennett v. Visa U.S.A. Inc.*, 198 S.W. 3d 747, 755 (Tenn. Ct. App. 2006) (quoting *Freeman Indus. v. Eastman Chem. Co.*, 172 S.W. 3d 512, 525 (Tenn. 2005)).

Defendant argues Plaintiffs' unjust enrichment claim is futile because it consists of only conclusory allegations and a threadbare recital of the elements. In Plaintiffs' proposed amended complaint, they allege that Defendant used Plaintiffs' "laboratory results, data, graphs, and related materials" to market its own antimicrobial filter product, and that it was unjustly benefitted by doing so. [Doc. 35-1 at Page ID # 393]. Plaintiffs allege that Defendant thus had a benefit conferred upon it by its appropriation of Plaintiffs' materials, and Defendant accepted that benefit. Plaintiffs also allege that it would be inequitable for Defendant to retain the profit it received as a result of appropriating Plaintiffs' property. Plaintiffs further allege that Defendant benefitted

15

from representing that it had developed the first generation of antimicrobial filters, when in fact Plaintiffs had developed the first generation of antimicrobial filters.

Defendant argues that its marketing statements cannot reasonably be understood as claiming that it developed the filter component of the first generation product, but instead were statements promoting itself as the seller of the completed first generation product—the combination of the filter product and the physical container. Contrary to Defendant's argument, however, the meaning of the language in Defendant's marketing materials remains to be determined. For the current futility analysis, the Court must assume that Plaintiffs' allegations are true. Taking all allegations and inferences as true, Plaintiffs' factual allegations of Defendant's appropriation and misrepresentation are enough to reach facial plausibility. Therefore, Plaintiffs' unjust enrichment claim is not futile, and the motion to amend is **GRANTED** with respect to this claim.

F.  **Unfair Competition Claim**

Plaintiffs allege Defendant has engaged in unfair competition practices, including Defendant's failure to register its product with the EPA and Defendant's use of Plaintiffs' confidential information to sell its product. Plaintiffs contend that they are entitled to compensation for Defendant's unfair competition.

Defendant argues that Tennessee does not recognize unfair competition as an independent tort, but rather as "a generic name for several related torts involving improper interference with business prospects." *B & L Corp.*, 917 S.W. 2d at 681 (citing W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 130 at 1013 (5th ed. 1984)). Defendant argues that Tennessee courts evaluate unfair competition claims in terms of their "predicate, non-generic tort," which here would be Plaintiffs' conversion claim [Doc. 43 at Page ID # 545]. As Plaintiffs' conversion

16

claim is futile, Defendant argues that Plaintiffs' "[u]nfair [c]ompetition claim—explicitly predicated on conversion—must likewise fail." [*Id.* at Page ID # 546].

While Defendant correctly argues the law as stated in *B & L Corp.*, that single case does not address all of Tennessee law regarding unfair competition as a claim. The Sixth Circuit addressed this issue in *Sovereign Order of Saint John of Jerusalem, Inc. v. Grady*, 119 F.3d 1236 (6th Cir. 1997), two years after *B & L Corp.* was decided by the Tennessee Court of Appeals. The Sixth Circuit found that while Tennessee law was not "well-developed" on this issue, unfair competition in Tennessee is a tort consisting of three elements. *Sovereign Order of Saint John of Jerusalem, Inc.*, 119 F.3d at 1243. The elements of unfair competition are:

> (1) the defendant engaged in conduct which "passed off" its organization or services as that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to deceive the public as to the source of services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization.

*Id.* (citing *Ferrari S.P.A. Esercizio Fabriche Automibili E Corse v. Roberts*, 739 F. Supp. 1138, 1146 (E.D. Tenn. 1990)). Unfair competition under Tennessee law requires a showing of "actual confusion," while the federal law of unfair competition, under the Lanham Act, only requires a showing of a "likelihood of confusion." *Id.* (citing 15 U.S.C. § 1125(a)(1); *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993)). Thus, it appears that the three elements, listed above, from *Sovereign Order of Saint John of Jerusalem, Inc.* form one of the "several related torts involving improper interference with business prospects" that make up the "generic" claim of unfair competition stated in *B & L Corp.*

Here, Plaintiffs have alleged claims against Defendant in tort and in contract, and seek remedy for economic loss resulting to Plaintiffs from Defendant's unfair competition. Plaintiffs'

17

complaint specifically alleges that Defendant has "passed off its product as that of the Plaintiffs and based upon Plaintiffs' data and test results." [Doc. 35-1 at Page ID # 393]. Plaintiffs further allege Defendant acted with intent to deceive the public, "and the public has been actually confused or deceived as to the source of such information and product." [*Id.* at Page ID # 394]. Thus, each of the three elements required for a Tennessee state law claim of unfair competition have been pleaded by Plaintiffs. Taken together with the other factual allegations in the proposed amended complaint as a whole, Plaintiffs' state-law unfair competition claim is facially plausible, and therefore not futile. Thus, the motion to amend will be **GRANTED** with respect to Plaintiffs' unfair competition claim.

## IV. ANALYSIS OF MOTION TO DISMISS

Plaintiffs' amended complaint supersedes the original complaint. *See Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008) (holding the "original complaint . . . is a nullity, because an amended complaint supercedes all prior complaints"); *B & H Med., LLC v. ABP Admin., Inc.*, 526 F.3d 257, 268 n.8 (6th Cir. 2008) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case.") (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (2d ed. 1990)). Defendant's motion to dismiss addresses the original complaint, which as noted is no longer the operative complaint in this case. Consequently, Defendant's motion to dismiss is moot. *See ComputerEase Software, Inc. v. Hemisphere Corp.*, No. 06-cv-247, 2007 WL 852103, at *1 (S.D. Ohio Mar. 19, 2007) ("Since the amended complaint replaces the original complaint, the motion to dismiss the original complaint is moot.").

## V. CONCLUSION

For the reasons explained above, Plaintiffs' motion to amend [Doc. 35] will be

**GRANTED IN PART** and **DENIED IN PART** as follows: Plaintiffs' motion to amend is **GRANTED** with respect to the Lanham Act, breach of contract, unjust enrichment, and unfair competition claims and is **DENIED** with respect to the FIFRA and conversion claims. Plaintiffs are hereby **ORDERED** to file an amended complaint consistent with this Order within **14 days** of entry of this order. Defendant's motion to dismiss [Doc. 30] is **DENIED** as moot. The stay of discovery [Doc. 45] is hereby **LIFTED** and Defendant is **ORDERED** to respond to Plaintiffs' discovery requests within **14 days** of the date the amended complaint is filed.

    SO ORDERED.

    ENTER:

                                            s/ *Susan K. Lee*
                                            SUSAN K. LEE
                                            UNITED STATES MAGISTRATE JUDGE